UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

In re:

BRIAN T. AND ANAHI E. HANLEY

Debtors.

Chapter 13

Case No. 8-11-76700-REG

## MEMORANDUM DECISION

The issues before the Court derive from three motions filed near the end of Brian and Anahi Hanleys' ("Hanleys" or "Debtors") chapter 13 bankruptcy case. The Debtors confirmed their Fourth Amended Chapter 13 Plan ("Plan") more than 60 months ago and made all of their Plan payments directly to the chapter 13 trustee ("Trustee"). However, like an increasing number of debtors, the Hanleys failed to remain current on their post-petition mortgage payments (made directly to the mortgagee) during the five-year plan period. Although this default was identified by their mortgagee in a document filed with the Court pursuant to Rule 3002.1 of the Federal Rules of Bankruptcy Procedure ("3002.1 Response") after the expiration of the 60-month plan term, the Debtors' post-petition mortgage defaults began long before the Plan term expired.

As this and other courts have held, a debtor's failure to make post-petition mortgage payments directly to a mortgagee constitutes a default of the plan. *See In re Coughlin*, 568 B.R. 461, 463 (Bankr. E.D.N.Y. 2017). Upon receipt of the 3002.1 Response, the Trustee made a motion to dismiss and close the Hanleys' case without granting a discharge ("Motion to Dismiss"). In response, the Debtors propose to cure the acknowledged default by asking the Court to approve a loan modification with the mortgagee which would wrap up the post-petition

arrears into a modified 40-year mortgage note ("Loan Modification Motion").  The Debtors additionally request that the Court strike the 3002.1 Response, which identifies their default, on the basis that the proposed loan modification would cure those defaults retroactively ("Motion to Strike").

The issue presented in this case is whether a chapter 13 debtor may cure an acknowledged default in his or her confirmed chapter 13 plan through a loan modification approved after the expiration of the 60th month.  The Court finds that while debtors may be able to cure a default in post-petition mortgage payments, the cure must be accomplished by a consensual loan modification approved by the court, or through a modification of the debtor's chapter 13 plan pursuant to 11 U.S.C. § 1329, and *either of these options must be approved by the Court prior to the expiration of the chapter 13 plan term.*

While it might seem inequitable or draconian to deny the Hanleys their discharge after making Plan payments to the Trustee for five years, the equitable powers of the Court cannot override the statute or the specific provisions of a confirmed chapter 13 plan.  In their confirmed Plan, the Hanleys promised to make not only their plan payments to the Trustee but also their post-petition mortgage payments directly to the mortgagee.  In exchange, the Hanleys intended to avail themselves of the benefits of the Bankruptcy Code and the chapter 13 discharge.  However, the Hanleys failed to uphold their end of the bargain by failing to comply with the stated terms of the confirmed Plan.  Because the Hanleys failed to obtain court approval of a consensual loan modification or seek modification of their confirmed Plan before the expiration of the 60th month, they are unable to cure the plan defaults.

Therefore, the Court will grant the Motion to Dismiss, deny the Loan Modification Motion, and deny the Motion to Strike.

## FACTS AND PROCEDURAL HISORY

The Debtors filed a chapter 13 petition on September 21, 2011.  The Debtors' Fourth

Amended Plan ("the Plan") was confirmed on February 17, 2012.  In addition to providing for

monthly plan payments ranging from $300 to $615 for 60 months, the Plan also states that:

DEBTORS ARE TO REMIT ALL POST PETITION MORTGAGE PAYMENTS ON
FIRST MORTGAGE TO BAC HOME LOANS OUTSIDE THE PLAN.

(Dkt. 37) (emphasis in original).

The Debtors' schedules reflect that they had approximately $116,000 in unsecured debt

on the filing date, largely credit cards, and the Plan proposes to pay unsecured creditors not less

than 2%.  The Plan further contemplates avoiding a second mortgage lien encumbering the

Debtors' primary residence.  The Debtors commenced an adversary proceeding in September of

2011, and default judgement was subsequently entered against Bank of America Home Loans

deeming the second mortgage claim to be allowed as a non-priority general unsecured claim, and

providing that the second mortgage lien would be voided upon the issuance of a chapter 13

discharge.  (Adv. Proc. No. 11-9398).[1]

After the Debtors completed their plan payments to the Trustee, on November 4, 2016,

the Trustee issued a Notice of Final Cure Mortgage Payment pursuant to Federal Rules of

Bankruptcy Procedure Rule 3002.1 ("3002.1 Notice").  Nationstar Mortgage LLC, as assignee of

BAC Home Loans[2] ("Nationstar" or "Bank"), timely responded to the 3002.1 Notice on

November 23, 2016.  ("3002.1 Response").  The 3002.1 Response acknowledged that the

---

[1]    After the default judgment was entered this claim was withdrawn on May 1, 2013 as the underlying debt was forgiven pursuant to the National Mortgage Settlement Extinguishment Program (Dkt. 48).

[2]    Bank of America aka BAC Home Loans transferred its claim to Nationstar Mortgage, LLC on September 9, 2013, as evidenced by the Notice of Assignment of Claim.  (Dkt. 49).

Debtors had cured all pre-petition mortgage arrears, but advised that the Debtors were not current with post-petition mortgage payments consistent with §1322(b)(5). *Id.* The 3002.1 Response notes that the Debtors were due for the April 1, 2015 through the November 1, 2016 payments indicating that the Debtors owed $52,319.84 in post-petition mortgage arrears. *Id.*

### The Motions and Parties' Arguments

On December 2, 2016, based upon the 3002.1 Response showing the default in post-petition mortgage payments, the Trustee filed the Motion to Dismiss (Dkt. 58). The Debtors filed opposition on December 19, 2016 arguing that any default in post-petition mortgage payments was cured by a trial loan modification, approved in May 2016, pursuant to which they have been making payments since June 2016 (Dkt. 59). Thus, they argue, the 3002.1 Response showing post-petition defaults was filed in error. The Trustee replied in support of his Motion to Dismiss stating that the Debtors' 60-month Plan had expired,[3] and if a trial modification had been entered into the Debtors would have had to modify their Plan. (Dkt. 60). The Trustee also asserted that the Court no longer has jurisdiction to approve a motion to modify the Plan because the 60 months has run. *Id.* A hearing on the Motion to Dismiss was held on December 22, 2016 at which hearing Debtors' counsel acknowledged the default in post-petition mortgage payments, and argued that the loan modification was intended to cure the default. The hearing was adjourned to permit the Debtors to seek affirmative relief from the Court to cure the default.

---

[3]     The 60-month period expired in this case on September 21, 2016. The 60-month period commences on the date on which the first payment is due under the plan, which is 30 days after the debtor files his or her chapter 13 petition. 11 U.S.C. §1326(a)(1) ("the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier."); *see also* 11 U.S.C. §1322(d)(1); 11 U.S.C. §1325(b)(1)(B); 11 U.S.C. §1329(c). *But see In re Profit,* 283 B.R. 567, 575 (B.A.P. 9th Cir. 2002) (identifying a split where some courts hold that the sixty months commence from the first payment due after plan confirmation).

First, on December 21, 2016, the Debtors filed the Motion to Strike the 3002.1 Response. (Dkt. 61). In the Motion to Strike, the Debtors argue that they have completed all payments contemplated by the Plan. *Id.* They argue that they have been remitting payments to Nationstar pursuant to the trial modification, and are awaiting a final determination on a permanent loan modification. *Id.* The Debtors argue that because of the trial modification, any post-petition defaults were cured and the information that Nationstar remitted in its 3002.1 Response was erroneous. *Id.* The Debtors request that the Court strike the 3002.1 Response and issue the Debtors a discharge.

Next, on December 29, 2016, the Debtors filed the Loan Modification Motion. (Dkt. 62). In support of the Loan Modification Motion, the Debtors attached a final loan modification approval letter and agreement, dated August 2, 2016, based on a satisfactory trial modification period. ("Approval Letter") (Dkt. 62 Exhibit A). The Approval Letter states that it was to be returned to Nationstar on or before August 12, 2016 with the attached agreement signed by both Debtors. *Id.* The Loan Modification Motion asks the Court to approve the loan modification *nunc pro tunc* to August 1, 2016, which they argue would cure the stated default on the post-petition mortgage payments before the expiration of their 60-month Plan. *Id.*

Nationstar filed an Affirmation in Opposition addressing both the Loan Modification Motion and the Motion to Strike. (Dkt. 65). In its Opposition, Nationstar argues that the proposed loan modification was neither signed nor returned to Nationstar by the August 12, 2016 deadline, and that Nationstar had subsequently declined the modification as of October 14, 2016. (Dkt. 65, Exhibit A). Therefore, Nationstar argues that any payments received after August 12, 2016 were applied to the original loan terms, and not to the proposed modified loan. *Id.* Nationstar maintains that its submission of the 3002.1 Response was not erroneous and without

proof that the Debtors' post-petition mortgage payments were made the Motion to Strike should be denied. *Id.*

A hearing on the Motion to Strike and the Loan Modification Motion was held on February 15, 2017 and adjourned to February 23, 2017 with the Motion to Dismiss. The motions were further adjourned to April 27, 2017 to allow the parties time to resolve the dispute. Absent any consensual resolution of the issues presented, the Court took the three motions under submission.

## DISCUSSION

The Bank does not consent to the relief sought by the Debtors. Nor does the Bank agree that the parties reached a final agreement to modify the mortgage. The Debtors are requesting the Court enter orders that would forgive the acknowledged default of their Plan and force the Bank into a deal they do not agree to. If granted the relief they seek, the Debtors ask the Court to deny the Motion to Dismiss and grant them a discharge of significant unsecured debt.

The record is clear that: under the terms of the confirmed Plan the Debtors are required to make all post-petition mortgage payments directly to the Bank; the Debtors did not obtain Court approval of the alleged loan modification; nor have they proposed to modify their Plan; the 3002.1 Response states that the Debtors are in default of their post-petition mortgage obligations having failed to make their post-petition mortgage payments from April 2015 through November 2016. The Debtors acknowledged during the hearings that not all post-petition mortgage payments were made. They argue that the proposed loan modification would cure the post-petition mortgage defaults, while at the same time acknowledging that no such agreement was ever signed by the parties or contemporaneously presented to the Court for approval.

Consequently, as of the 60th month of the Plan the Debtors were in default of their Plan. *See In re Coughlin*, 568 B.R. 461, 463 (Bankr. E.D.N.Y. 2017).

The Court will accept, for the moment, the Debtors argument that they have an enforceable agreement to modify their mortgage note despite acknowledging that they failed to accept the Bank's offer by August 12, 2016 deadline. Accepting this premise, this case presents the Court with an issue of first impression in this Circuit which is whether a chapter 13 debtor may cure an acknowledged default in post-petition direct mortgage payments, to be made pursuant to a confirmed chapter 13 plan, through a loan modification approved after the expiration of the 60th month.

The Debtors present the Court with two arguments: first, they should be able to enter into a loan modification after the 60 months have expired and still be eligible for a discharge because the loan modification cures the plan default; alternatively, the loan modification was entered into before the expiration of the 60 months (which cured the Plan default) and can be approved *nunc pro tunc*. It is the Debtors' position that because the Bank offered a permanent loan modification, the default in post-petition mortgage payments have been cured or can be cured and thus the Debtors are entitled to their discharge because all payments have been completed under the Plan pursuant to §1328(a).

## I. Whether a debtor may cure defaults in direct post-petition mortgage payments

The Court finds that plan defaults can be cured under certain circumstances. *See e.g., In re Hoggle*, 12 F.3d 1008, 1009 (11th Cir. 1994); *In re Nichols*, 440 F.3d 850, 857 (6th Cir. 2006); *In re Aubain,* 296 B.R. 624, 634 (Bankr. E.D.N.Y. 2003) (J. Bernstein). However, how and when that cure can be effectuated is proscribed by Title 11 and is not to be determined by the equities of the matter, nor left entirely to the discretion of the Court. The first question to be

decided, therefore is *how* a debtor may cure post-petition mortgage payments that were to be made directly to a mortgagee pursuant to the terms of a confirmed plan.

## II. How may a debtor cure defaults in direct post-petition mortgage payments

### A) Through a loan modification approved by the Court

The Court finds that a post-confirmation loan modification that wraps up a debtor's post-confirmation mortgage arrearages into the modified loan may be approved by the Court and cure the plan default. A bankruptcy court may not grant a discharge to a debtor if payments under the plan are not "complete." *See* 11 U.S.C. §1328(a) (". . . as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge . . .."). "All payments" include post-petition mortgage payments. *In re Coughlin*, 568 B.R. at 474. Because the Bankruptcy Code requires a finding that the debtor made all payments under the plan, a loan modification that cures any missed post-petition mortgage payments can and should be approved by the Court in order to find that payments are complete under the plan. [4] When a debtor reaches a consensual agreement with their mortgagee to cure post-petition mortgage defaults, the debtor is required to seek approval of that loan modification by the bankruptcy court to cure the plan defaults.

---

[4]      *But see In re Smith,* 409 B.R. 1, 4 (Bankr. D. N.H. 2009). The court in *In re Smith,* found that the bankruptcy court has no jurisdiction to approve loan modifications because there was no case or controversy to be decided. *Id.* In *Smith*, the debtors and their mortgagee were seeking a comfort order approving the loan modification. The *Smith* court noted that it would not approve the loan modification standing alone as there was no "case or controversy." *In re Smith* is distinguishable from the facts of this case because here, the Debtors are seeking the approval of a loan modification in order to cure a default under their Plan. Approving a loan modification that *cures a default under the Plan* is not a "stand alone" motion unrelated to the Debtors' bankruptcy case.

**B) Through a plan modification**

The Court finds that although an agreement to modify a debtor's mortgage (thus curing the plan default) must be approved by the Court, it need not be memorialized in a modified chapter 13 plan. However, absent agreement with the mortgagee, a debtor who has post-petition mortgage arrears, and therefore is in default of their plan, *may* seek to cure that default through a modified chapter 13 plan *as long as all payments under the modified plan are complete before the expiration of the plan term.*[5]

A number of courts have found that post-confirmation plan modifications to cure post-petition mortgage defaults are impermissible. *See, e.g.*, *In re Hollis*, 105 B.R. 1003, 1006 (N.D. Ala. 1989) (finding no ability under the Code to allow a debtor to cure post-confirmation arrearages through a modification of the plan); *In re Binder*, 224 B.R. 483, 488 (Bankr. D. Colo. 1998) (finding that although the debtor's proposal to cure the post-petition mortgage defaults through a plan modification extending payments for full 60 months was proposed in good faith, it was neither feasible nor reasonable pursuant to §§1329(b)(1), 1322(b)(5) (reasonableness) and 1325(a)(6) (feasibility)); *In re Sensabaugh,* 88 B.R. 95 (Bankr. E.D. Va. 1988) (dismissing the chapter 13 debtor's case for a default in post-confirmation direct mortgage payments and noting that the debtor's motion to modify could not be granted because curing seven unpaid post-petition mortgage payments through a newly proposed plan would go beyond the intent of §1322(b)(5) and was also not temporally reasonable as the statute requires).

In *In re Long*, 453 B.R. 283 (Bankr. W.D. Mich. 2011), the court found that §1329 "permits only those modifications specifically set forth in [1329](a) and that subpart [(a)] does not allow for the second modification of [the mortgagee's] rights that the Debtors need." *Id.* at

---

[5]        *See discussion infra.*

292.[6]  The *Long* court's reasoning is consistent with a line of cases which finds impermissible a

debtor's proposal to surrender property through a post-confirmation plan modification because it

is a change of the treatment of the secured creditor.  This position is articulated by the reasoning

of the Sixth Circuit in *In re Nolan*, where it was found that surrendering property is an alteration,

reduction or reclassification of a previously allowed secured claim and is not expressly allowed

by §1329(a).  *Chrysler Financial Corp. v. Nolan (In re Nolan),* 232 F.3d 528, 532 (6th Cir.

2000).  The Sixth Circuit found that because it would be a modification of the *rights* of the

secured creditor to surrender the property, §1329(a) did not allow for a modification in that

manner.  *See also In re Adkins,* 425 F.3d 296 (6th Cir. 2005) ("'[S]ection 1329(a) does not

expressly allow a debtor to alter, reduce or reclassify a previously allowed claim,' but rather only

'affords the debtor a right to request an alteration of the *amount* or *timing* of specific

payments.'"); *In re Kurtz,* 502 B.R. 238 (Bankr. D. Colo. 2013) (finding that after the debtor had

confirmed a plan to "cure and maintain" the debtor could not modify his plan post-confirmation

to surrender the property because §1329(a) did not allow for the debtor to modify the *rights* of a

first mortgage holder); *In re Brown*, 399 B.R. 574, 577 (D. Conn. 2008) (same); *In re Ramos,*

540 B.R. 580 (Bankr. N.D. Tx. 2015) (same).[7]

   Clearly, the Bankruptcy Code does not allow the Debtors to change the terms of the

mortgage note over the objection of the Bank.  *See Nobelman v. American Savings Bank*, 508

---

[6]      Although the *Long* court would not approve the plan modification over the mortgagee's
objection, the court did suggest that its holding might be different if the debtor had an agreement with the
mortgagee.

[7]      *But see e.g., In re Coughlin,* 568 B.R. 461 (finding that the debtor could modify her plan to
surrender the home after post-petition mortgage payments had not been made to cure the default under the
plan); *In re Dennett*, 548 B.R. 733, 737 (Bankr. N.D. Tex. 2016) (refusing to "read 'surrender' out" of
§1329(a)). The Court notes that there is a split of authority on whether a debtor may modify a confirmed
plan to surrender property, but will not decide this issue today as it is beyond the scope of this Decision.

U.S. 324 (1993); 11 U.S.C. §1322(b)(2).  However, a modified plan which allows a debtor to catch up on post-petition mortgage payments is not a change in the treatment of the secured creditor, thus distinguishing the present facts from those in the cases cited above.  *See e.g., In re Gadlen,* 110 B.R. 341, 346 (Bankr. W.D. Tenn. 1990) (finding that a debtor may cure post-petition arrearages through a modification of a plan noting that the bank would have the right to file a claim for that amount plus interest); *In re McCollum*, 76 B.R. 797, 801 (Bankr. D. Or. 1987) (a debtor may cure post-confirmation mortgage payment defaults by modifying the plan to include those arrearages); *In re Safford,* 123 B.R. 415 (N.D. Ala. 1991) (same).  As the Fifth Circuit correctly points out, "[t]here is a distinction between modifying the rights of a mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than that provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears."  *Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1267 (5th Cir. 1997).

This Court respectfully disagrees with the courts that hold otherwise, and finds that a debtor may cure post-petition mortgage arrears, absent the consent of the secured creditor, through the plan modification process because it is a change in the timing of post-petition payments to the mortgagee, not a change in the treatment.  Section 1329 allows a debtor to cure a post-confirmation default on post-petition mortgage payments through a modification of the plan as long as the other requirements under §1329(a) are met.  Section 1329 provides:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to -
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> *(2) extend or reduce the time for such payments;*

> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but ***the court may not approve a period that expires after five years after such time***.

11 U.S.C. §1329 (emphasis added).  Specifically, subsection (2) permits post-confirmation modifications to *extend* or *reduce* the time for such payments.  In other words, a debtor may modify his or her confirmed plan to extend the time to make post-petition mortgage payments that come due during the plan term as long as the catch-up payments are completed *within the plan term*.  8 Collier on Bankruptcy ¶ 1329.04 (16th Ed. 2017).[8]  *See e.g., In re Kapp,* 315 B.R. 87 (Bankr. W.D. Mo. 2004) (upon the showing of changed circumstances, the debtors were permitted to modify their plan to cure post-petition mortgage payments missed under §§1329(a)(1) and 1329(a)(2) as long as the "creditor is in the same situation at the conclusion of the plan as it would have been if there were no default"); *In re Stafford*, 121 B.R. 109, 113 (Bankr. N.D. Ala. 1990), *aff'd*, 123 B.R. 415 (N.D. Ala. 1991) (citing §1329(a)(2) as authority to cure post-petition direct mortgage payment defaults through a modified plan).  This will cure the default and allow the debtor to receive a discharge pursuant to §1328(a) assuming all other requirements of the plan and §1329 are met.

This conclusion is also consistent with §1322(b)(5), incorporated into modifications by §1329(b), which allows a chapter 13 plan to cure defaults on secured debt.  *See Green Tree*

---

[8]    "Section 1329(a)(2) provides that the confirmed plan may be modified so as to extend or shorten the time within which payments on one or more classes of claims were to have been made under the previously confirmed plan, but any protraction of the extension period during which distributions were to have been made to creditors may not extend the period over which the debtor is required to make payments under the plan in contravention of section 1329(c). Thus, for example, the court may suspend payments temporarily."

*Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008 (11th Cir. 1994) (permitting cure of post-petition mortgage defaults through plan modification); *In re Nalls*, No. 06 01291 TOM 13, 2007 WL 988039, at *3 (Bankr. N.D. Ala. Apr. 2, 2007 as amended (May 7, 2007)) (in order to modify a plan post-confirmation to cure the direct mortgage defaults the debtor must show that: "(1) the default on her mortgage was caused by unforeseen circumstances, (2) the default can be cured within a reasonable time while regular payments are maintained, (3) the modified plan is proposed in good faith, and (4) the modified plan is feasible"); *In re Gadlen,* 110 B.R. 341, 346 (Bankr. W.D. Tenn. 1990) (finding that a debtor may cure post-petition arrearages through a modification of a plan noting that the bank would have the right to file a claim for that amount plus interest); *In re Davis*, 110 B.R. 834, 836 (Bankr. W.D. Tenn. 1989) (same); *In re Mannings*, 47 B.R. 318, 321 (Bankr. N.D. Ill. 1985) (same); *In re Bellinger,* 179 B.R. 220 (Bankr. D. Id. 1995) (recognizing that a majority of courts allow a modification of chapter 13 plan to include post-confirmation arrearages and Congress' intention to provide homeowners with continuing rights to cure defaults is illustrated by the codification Bankruptcy Reform Act of 1994 in §1322(c)(1); *In re Awua,* No. 96-10613-SSM, 1997 WL 1524800, at *4 (Bankr. E.D. Va. Feb. 24, 1997) (the majority of courts have held that a default in post-petition mortgage payments may be cured by a modification of the debtor's plan); *see also In re Salpietro*, 492 B.R. 630 (Bankr. E.D.N.Y. 2013) (discussing when chapter 13 plan modifications may be appropriate).

Accordingly, a debtor who has missed post-petition mortgage payments may cure their default either through a consensual loan modification approved by the Court, or a modification of their confirmed Plan but, as discussed below, either must occur prior to the expiration of the 60th month.

### III.  When may a debtor cure defaults in direct post-petition mortgage payments

The majority of courts have held that a default in plan payments may be cured within a reasonable time after the 60 months have expired.  *See Shovlin v. Klass,* 539 B.R. 465, 473 (W.D. Penn. 2015) (collecting cases showing a majority and minority position on the issue) (citing to *Marshall v. Henry,* 368 B.R. 696, 701 (N.D. Ill. 2007).  The reasoning behind the majority approach is based on the belief that the debtors are not seeking to extend the plan, rather they are only curing a default on already scheduled payments. *See In re Aubain,* 296 B.R. 624, 634 (Bankr. E.D.N.Y. 2003) (J. Bernstein).  Some courts also consider equitable justifications for allowing debtors to make payments to complete their plan beyond the 60 months because they find that dismissal is discretionary.  *See In re Harter,* 279 B.R. 284, 288 (Bankr. S.D. Cal. 2002) (finding "§1322(d) does *not* contain a 'drop dead' provision that mandates dismissal of the case after five years" and deeming the debtor's plan cured because it completed payments within a reasonable time); *In re Hill,* 374 B.R. 745 (Bankr. S.D. Cal. 2007) (the mandate in §1322(d) that the plan cannot provide for payments over 60 months is a requirement for confirmation, rather than cause to dismiss after confirmation); *In re Hoggle,* 12 F.3d at 1012 (curing a plan default may occur as long as it is "effectuated in a reasonable time and simultaneously maintain[ed] payments on the long term loan").

While sympathetic to the plight of the debtor who faithfully makes plan payments for five years and finds himself at the 11th hour faced with fixing this problem of missed post-petition mortgage payments, this Court must depart from the majority opinion on this issue.  The Court finds that the plain language of the statute dictates a drop dead date for payments made pursuant to a chapter 13 plan.  *See* 11 U.S.C. §§1322(a)(4), (d)(1), (d)(2), §1325(b)(1)(B) and §1329(c).[9]

---

[9]        Section 1322(a)(4) reads: "The plan – […] (4) notwithstanding any other provision of this section, may provide for less than full payment of all amounts owed for a claim entitled to priority […]

The Code contemplates a plan's "5-year period beginning on the date that the first payment is due under the plan" and the court is unable to "approve a period longer than 5 years" or "a period that expires after five years." *Id.* In addition, §1329 is clear that any plan modification must be accomplished "before the completion of payments under such plan." 11 U.S.C. §1329(a). Thus, the Court concludes that a plan may not be modified after the plan term has expired, and no "reasonable time" to cure payments beyond the expiration of the plan term is contemplated by the plain language of §1328 or §1329.

A minority of courts agree with this "drop dead" jurisdictional deadline. *See In re Ramsey*, 507 B.R. 736, 739 (Bankr. D. Kan. 2014) (finding that "the debtors will have failed to honor their commitment to pay their projected disposable income to their unsecured creditors [if] the debtors do not cure the plan default by the end of the five year applicable commitment period, [therefore] they will not receive a discharge); *In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010) (holding that §1322(d) limits chapter 13 plans to five years, and because the

only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."

Section 1322(d)(1) (which addresses a plan period for above median income debtors) provides: "(1) …the plan may not provide for payments over a period of time that is longer than 5 years."

Section 1322(d)(2) (which addresses a plan period for below median income debtors) provides: "(2) …the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."

Section 1325(b)(1)(B) reads: "the court may not approve the plan unless […] the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."

Section 1329(c) reads: "A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."

debtor did not pay the proposed 4.5% to unsecured creditors, and did not take advantage of modifying her plan under §1329, the case was dismissed under §1307.

This Court can only grant a chapter 13 discharge upon a finding that the debtor has completed "all payments under the plan." 11 U.S.C. §1328(a). Although generally courts have held that a plan is "complete" under §1328(a) when the debtor makes all payments as contemplated by the plan, *see In re Jacobs*, 263 B.R. 39, 44 (Bankr. N.D.N.Y. 2001) (noting that a plan is complete when all payments are made to the trustee),[10] there are temporal limitations on the debtor's ability to complete those payments. This Court finds that where a debtor is curing post-petition mortgage defaults through a modified plan completion of plan payments, including the cure payments, cannot be accomplished beyond the 60th month because §§1322(d) and 1329(c) will not allow an extension beyond five years. However, if a debtor proposes to cure the plan default through a consensual loan modification, the modified loan payments will more than likely extend beyond the 60th month. This is permitted by the Code. Section 1322(b)(5) allows for long term secured obligations to exceed the temporal limits of the chapter 13 plan term. Most debtors confirm plans that contemplate ongoing mortgage payments that extend well beyond the five-year plan period. As long as the default is cured by approval of the loan modification before

---

[10]    *Compare In re Salva*, No. 03-09405(ESL), 2009 WL 2898822, at *5 (Bankr. D.P.R. Apr. 1, 2009) (finding that when the debtor had completed all payments contemplated by the plan, the trustee's motion to modify was time-barred); *In re Holman*, 567 B.R. 599 (Bankr. D. Kan. 2017) (same); *In re Phelps*, 149 B.R. 534, 539 (Bankr. N.D. Ill. 1993) (same), *with In re Meza,* 467 F.3d 874, 878 (5th Cir. 2006) (finding that a modification motion should have been heard even after the debtors had made all their payments); *In re Moss*, 91 B.R. 563, 565 (Bankr. C.D. Cal. 1988) (same); *In re Delmonte*, 273 B.R. 132 (Bankr. E.D. Tx. 1999) (finding that debtors had not completed their payments under the plan when the debtors pre-paid all allowed claims a few months after the plan was confirmed, and that the creditor's timely filed amendment to its claim must be paid through the plan until all remaining creditors were paid in full); *In re Rivera*, 177 B.R. 332, 335 (Bankr. C.D. Cal. 1995) (finding that debtors had not completed their payments when plan proposed to pay unsecured creditors 65% of their claims, and 36 payments made to trustee did not actually pay unsecured creditors 65%); *In re McKinney*, 191 B.R. 866 (Bankr. D. Or. 1996) (holding that debtors must continue plan payments, at a minimum, for a time sufficient to meet requirements of §1325(b)(1) to ensure a distribution to unsecured creditors, even though debtors had paid what they proposed in the confirmed plan that only proposed to pay priority claims).

the expiration of the 60th month, the extension of mortgage payments beyond the 60th month on a

consensually modified loan is permissible.

## IV) The Loan Modification Motion

The Debtors propose to cure their post-petition mortgage defaults by seeking approval of

a loan modification which, they argue, should retroactively cure those defaults. Although the

Debtors' position is that the unsigned permanent loan modification in the present case indicates

that the Bank was willing to accept the proposed loan modification, the Court finds that the

Debtors never accepted the Bank's proposal and the offer lapsed.  Therefore, the Court will not

approve the Loan Modification Motion over the Bank's objection.

Although the Debtors have not proposed to modify their confirmed Plan under §1329, the

Trustee argues that the Debtors should have made a motion to modify the Plan to cure the missed

post-petition mortgage payments.  Had the Debtors sought to modify their plan to catch up on

their post-petition mortgage arrears, the modification must have been approved before the 60th

month, *and* all payments under the proposed modified plan must have been completed prior to

the expiration of the 60th month.

In this case, the Debtors failed to make post-petition mortgage payments directly to the

Bank and therefore, they were in default of their Plan.  Because the Debtors failed to (a) modify

their plan before the 60th month to catch up on these missed payments, or (b) obtain approval of a

consensual loan modification prior to the expiration of the 60th month, the Court cannot grant the

Debtors a discharge pursuant to §1328.  The Debtors were, or should have been, aware well in

advance of the 60th month that they were in default of their Plan by failing to make post-petition

mortgage payments.  As previously noted, the Hanleys stopped making their post-petition

mortgage payments long before the Plan term expired, and it was incumbent upon them to ensure that the Plan default was timely cured.

## V)  The Motion to Strike the Bank's 3002.1 Response

The Debtors concede that some post-petition mortgage payments were not made, and they concede that the loan modification was not signed and returned by the August 12, 2016 deadline.  Thus, the Court finds there is no genuine dispute as to the missed payments and there is no basis to strike the 3002.1 Response.  *See* Rule 3002.1(h).[11]  The Debtors' Motion to Strike is denied.

## VI) The Trustee's Motion to Dismiss

Pursuant to §1307(c) upon a request by a party in interest and after notice and a hearing, the Court may dismiss a case for cause including "material default by the debtor with respect to a term of a confirmed plan."  11 U.S.C. §1307(c)(6).  Dismissal is appropriate in the Hanleys' case because the Debtors were in default of the Plan, and a discharge cannot be granted pursuant to §1328.

---

[11]     Rule 3002.1(h) reads: "On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and a hearing, determine whether the debtor has cured the default and paid all required post-petition amounts."

18

## CONCLUSION

For the reasons stated, the Court denies the Motion to Strike, denies the Loan Modification Motion and grants the Motion to Dismiss.  The Trustee is directed to settle an order consistent with this Memorandum Decision on counsel for the Debtors' pursuant to E.D.N.Y. LBR 9071-1.



**Dated: Central Islip, New York**
**August 11, 2017**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**